TIMOTHY COURCHAINE
United States Attorney
District of Arizona

ABBIE S. BROUGHTON
California State Bar No. 226680
Assistant United States Attorneys
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: Abbie.Broughton@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>            Plaintiff,<br><br>    vs.<br><br>Rene Ortiz,<br><br>            Defendant. | CR-25-00153-PHX-DGC<br><br>**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS INDICTMENT** |

Defendant Rene Ortiz was charged with making specific written threats, the elements and facts of which are clearly alleged in the Complaint and Indictment (Docs. 3 and 11). Whether those threats violated 18 U.S.C. § 871 and § 879 should be decided by a jury after hearing all the evidence and context at trial. The United States has sufficiently alleged violations of 18 U.S.C. § 871 and § 879 such that the case against Defendant should proceed to trial. Moreover, Defendant's motion to dismiss, which essentially previews arguments he can make at trial under Rule 29 or during his closing argument, is premature. As a result, Defendant's motion should be denied.

**Background**

In the weeks leading up to the last Presidential election and shortly thereafter, including November 5, 2024, and November 25, 2024, Defendant lodged documents with the United States District Court for the District of Arizona including statements that may

1  incite violence and directly threatened two different individuals, including the two
2  presidential candidates and the ultimate President elect—who also happened to be a former
3  President. *See* Complaint (Doc. 3).

4  The written threats charged in this case appeared in the form of legal pleadings
5  lodged with the court by Defendant. On November 5, 2024, election day, Defendant
6  delivered a document to the Sandra Day O'Connor Courthouse located at 401 W.
7  Washington St. Phoenix, AZ 85003.  The document was signed by Rene Ortiz. The
8  document contained the following threats toward whomever may be incoming President of
9  the United States.

> Plantiff(s) moves the court to execute by firing 6 shots from am m-16 a2 service rifle at the winner of the newly elected POTUS either being K.D. Harris or D.J.Trump.
> I, Rene Ortiz, hereby move the Court to Execute the newly elected POTUS. I chose to execute the newly elected POTUS by firing an M-16 A2 Service Rifle with a magazine of 6 rounds. The Court and the Defendants were warned to withdraw from their campaign.
> The Plaintiff petitions the Court for him to make an attempt to shot at the Candidate with a M-16A2 rifle with a magazine of 3 rounds from a distance of 300 or 500 yards, the rounds targeting the head not the ear of the Candidate.

On November 25, 2024, RENE ORTIZ delivered two additional documents at Evo A. DeConcini U.S. Courthouse located at 405 W. Congress Street, Tucson, AZ  85701. Those documents contained the following language.

> Any refusal of any right, Mr. Ortiz will be entitled to shot the incoming fraudulent elected POTUS from 300 or 666 yards away with 666 rounds for an m-16a2 service rifle at the inaguration on jan 20th, 2025.

An additional document signed by Defendant and lodged the same day contained the statement:

> The Plaintiff petitions the Court for him to make an attempt to shot at the Candidate with a M-16A rifle with a magazine of 3 rounds from a distance of 300 or 500 yards, the rounds targeting the head not the ear of the Candidate.

On December 5, 2024, Secret Service Agents interviewed Defendant at the Secret Service Phoenix Field office. During the interview, Defendant admitted to making the threats. When asked if he planned to shoot the President Elect, Defendant responded, "if my demands are not met." When asked about how he would obtain a firearm he explained he was not sure. Defendant explained his grievance is with the Department of Veteran's Affairs (VA).[1]

On January 17, 2025, Defendant was charged by complaint and arrested. (Doc. 3) Shortly thereafter, the grand jury issued a three-count indictment charging Defendant with violating 18 U.S.C. § 871 and § 879, which prohibit knowingly and willfully making a threat to take the life of, kidnap, or inflict bodily harm on the President, President-elect, the Vice President, or others in line for the presidency, and making the same threat toward a former president.

## **Argument**

**I.     Standard**

Defendant's motion to dismiss the Indictment (Doc. 21) is governed by Rules 7 and 12 of the Federal Rules of Criminal Procedure. Rule 7 requires the indictment "be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). "'A legally sufficient indictment must state the elements of the offense charged with sufficient clarity to apprise a defendant of the charge against which he must defend, and to enable him to plead double jeopardy.'" *United States v. Givens*, 767 F.2d 574, 584 (9th Cir.), cert. denied, 474 U.S. 953 (1985), citing *Hamling v. United States*, 418 U.S. 87, 117 (1974). "'An indictment which tracks the words of the statute charging the offense is sufficient so long as the words unambiguously set forth all elements necessary to constitute the offense.'" *Id*. "'The indictment should be read in its

---

[1] Defendant included information conveyed between counsel that the government tried to offer interventions short of charging in his fact section. This information has no place in a motion to dismiss and is not relevant to the factual background of this case and if counsel is trying to argue that such efforts undermine the legal sufficiency of the Indictment such argument is improper.

entirety, construed according to common sense, and interpreted to include facts which are necessarily implied.'" *Givens*, 767 F.2d at 584, citing *United States v. Anderson*, 532 F.2d 1218, 1222 (9th Cir.), cert. denied, 429 U.S. 839 (1976).

Rule 12 provides a defendant can move for dismissal based on a defect in the indictment, including failure to state an offense. Fed. R. Crim P. 12(b)(3)(B)(v). In considering a motion to dismiss, the Court is required to "accept the truth of the allegations in the indictment in analyzing whether a cognizable offense has been charged" and is "bound by the four corners of the indictment." *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002) (citation omitted) (holding district court erred in dismissing indictment). "A motion to dismiss the indictment cannot be used as a device for a summary trial of the evidence." *United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1995) (citation omitted) (holding district court erred in dismissing indictment). And the Court can consider a motion to dismiss only where it involves questions of law rather than fact. *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452-53 (9th Cir. 1986) (holding "it was within the trial judge's sound discretion" to deny motion to dismiss and "defer the issue to jury consideration").

**II.   Analysis**

The Indictment here satisfies the requirements of Rule 7.  It states the elements of the offense with sufficient clarity to apprise Defendant of the charges against him. The Ninth Circuit Model instruction for the violations charged here, 18 U.S.C. § 871 and § 879, has been withdrawn after *Elonis v. United States,* 575 U.S. 723, 740 (2015). The Committee reasoned that:

> *Elonis* rejected the rule applied in the Ninth Circuit that "'[w]hether a particular statement may properly be considered to be a threat is governed by an objective standard—whether a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of intent to harm or assault.'"  *United States v. Keyser*, 704 F.3d 631, 638 (9th Cir. 2012) (quoting *United States v. Orozco-Santillan*, 903 F.2d 1262, 1265 (9th Cir. 1990)).  The withdrawn instruction incorporated an element that also used an objective standard when

viewing whether the communication was a threat. While this crime is not identical in its elements to the more general crime under 18 U.S.C. § 875(c), a court may want to consider whether the legal analysis regarding the mens rea element in Elonis applies to the more specific crime of threats against the President. *See also United States v. Bagdasarian,* 652 F.3d 1113, 1122-23 (9th Cir. 2011) (reversing conviction under 18 U.S.C. § 879(a)(3), criminalizing threats against major presidential candidates, when defendant's statements were "predictive" and "exhortatory" but did not indicate speaker's own intention to threaten then-candidate Obama).[2].

Additionally, there has been subsequent Supreme Court caselaw on the proper *mens rea* in threat cases in *Counterman v. Colorado*, 143 S. Ct. 2106 (2023). There, the Supreme Court held that, in order to avoid "chilling fully protected expression," the First Amendment requires the government to prove in a criminal prosecution for "true threats" that the defendant subjectively understood the threatening nature of his statement. *Id.* at 2115. The Court further held, however, that a mental state of recklessness is constitutionally sufficient. "[R]eckless defendants," the Court observed, "have done more than make a bad mistake. They have consciously accepted a substantial risk of inflicting serious harm." *Id.* at 2118; *see id.* at 2119 (explaining that recklessness "offers 'enough "breathing space" for protected speech,' without sacrificing too many of the benefits of enforcing laws against true threats"). Accordingly, under the First Amendment, the government need only "show that the defendant consciously disregarded a substantial risk that his communications would be viewed as threatening violence" to establish criminal liability for true threats; it "need not prove any more demanding form of subjective intent to threaten another." *Id.* at 2111- 12. Though the correct instruction on *mens rea* in threats case has become less clear since *Counterman,* the statutes charged in this case, 18 U.S.C. § 871 and § 879, vary from the statutory language in 875(c) in that they include language "knowingly and willfully".

18 U.S.C. 871 reads:
> **(a)** Whoever knowingly and willfully deposits for conveyance in the mail or for a delivery from any post office or by any letter carrier any

---

[2] *Available at* https://www3.ce9.uscourts.gov/jury-instructions/node/930

- 5 -

letter, paper, writing, print, missive, or document containing any threat to take the life of, to kidnap, or to inflict bodily harm upon the President of the United States, the President-elect, the Vice President or other officer next in the order of succession to the office of President of the United States, or the Vice President-elect, or knowingly and willfully otherwise makes any such threat against the President, President-elect, Vice President or other officer next in the order of succession to the office of President, or Vice President-elect, shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C.A. § 871 (West)

18 U.S.C. 879 reads:

(a) Whoever knowingly and willfully threatens to kill, kidnap, or inflict bodily harm upon-

(1) a former President or a member of the immediate family of a former President;

(2) a member of the immediate family of the President, the President-elect, the Vice President, or the Vice President-elect;

(3) a major candidate for the office of President or Vice President, or a member of the immediate family of such candidate; or

(4) a person protected by the Secret Service under section 3056(a)(6);

shall be fined under this title or imprisoned not more than 5 years, or both.

18 U.S.C. § 879 (West)

But, while there is some unsettled law as to the required *mens rea*, based on prior caselaw, and tracking the statutory language the elements of these offenses are:

**Count 1 and 3 (871-Threats Against Presidents and Successors to the Presidency):**
First, the defendant knowingly and willfully made a threat to take the life of, kidnap, or to inflict bodily harm; and
Second, the threat was directed to the President, the President-elect, the Vice President, or others in line to the presidency.

**Count 2 (879-Threats Against Former Presidents and Other Protectees):**
First, the defendant knowingly and willfully made a threat to take the life of,

kidnap, or to inflict bodily harm; and
Second, the threat was directed to a Former President, member of the immediate family of a former President, a member of the immediate family of the President, President-elect, Vice President, or Vice President elect, a major candidate for the office of President of Vice President, or a person protected by the United States Secret Service under 18 U.S.C. § 3056(a)(6)

### A.    All Counts Allege "True Threats".

The Indictment sufficiently alleges Defendant's communications – "I chose to execute the newly elected POTUS by firing an M-16A2 Service Rifle with a magazine of 6 rounds", and "Mr. Ortiz will be entitled to shot the incoming fraudulent elected POTUS from 300 or 666 yards away with 666 rounds for an M-16A2 service rifle at the inauguration on Jan 20, 2025" – were true threats of violence.

"True threats of violence are outside the bounds of First Amendment protection and punishable as crimes." *Counterman v. Colorado*, 600 U.S. 66, 69 (2023).  A true threat is a serious expression conveying that a speaker means to commit an act of unlawful violence to a particular individual or group of individuals. *Virginia v. Black*, 538 U.S. 343, 359 (2003). The term "true" distinguishes what is at issue from jests, hyperbole, or other statements that when taken in context do not convey a real possibility that violence will follow. *Watts v. United States*, 394 U.S. 705, 708 (1969).

"Whether a statement amounts to a 'true threat' is a question of fact best decided by a jury." *See, e.g.*, *United States v. Zavalidroga*, 165 F.3d 1241, No. 97-10290, 1998 WL 403361, at *1 (9th Cir. 1998); *United States v. Stock*, 728 F.3d 287, 298 (3d Cir. 2013) ("In the usual case, whether a communication constitutes a threat or true threat 'is a matter to be decided by the trier of fact.'") (citation omitted); *United States v. Syring*, 522 F. Supp. 2d 125, 134 (D.D.C. 2007) ("[W]hether Defendant's communications constituted a true threat is an issue properly left to the jury as the trier of facts."). A district court should dismiss an indictment only if the language is so facially insufficient that no reasonable jury could find that the language amounted to a true threat. *Zavalidroga*, 1998 WL 403361, at *1; *United States v. Toltzis*, No. 14-CR-00567-RMW, 2016 WL 3479084, at *3 (N.D. Cal. Jun. 27, 2016) (denying motion to dismiss counts alleging violations of 18 U.S.C. § 876(c)).

The Indictment here includes all the statutory requirements. Contrary to Defendant's argument, the victims are identifiable.[3] Their names were included in Defendant's documents submitted to the court and those documents were also part of the complaint. In Count 1 of the Indictment, it is alleged that Defendant made a threat to take the life of, and to inflict bodily harm upon Victim 1—the Vice President and a candidate at the time of the threat. The "newly elected POTUS" at the time of the offense, the day of the presidential election, could have been one of two potential candidates. And the unredacted indictment identifies the alleged victim by name.

Count 2, using the same statutory language, alleges the same threat against the Victim 2—a former president and candidate for the presidency—in violation of 18 U.S.C § 879 because of his position at the time, as a former president. Again, the facts in the unredacted version of the indictment, available to defense in discovery, and that will be presented to the jury all establish a specific victim that is clear from the language of the threat.

Finally in Count 3, where the threat was directed at Victim 2—on November 25, 2024, then President-Elect—the same language was used to allege a threat in violation of 18 U.S.C. § 871, again based on the presidential status at the time the threat was made.

The Indictment cited by Defendant in his motion is the redacted version of the Indictment where, by policy, victim's names are not used. An unredacted version of the indictment was submitted to the grand jury and should be available to defendant. Additionally, the identity of both victims is included in the discovery. The jury will learn the true names of the victims and their positions as vice president, former president, and president elect. A reasonable jury could conclude Defendant's threats in all three counts of the Indictment are true threats. Given the context alleged in the Indictment, as well as additional context that will be presented at trial, a reasonable jury could conclude defendant's threats are "true threats".

---

[3] It appears defense counsel is referring to the redacted Indictment. There is an unredacted Indictment where each victim is identified by name.

Defendant also argues in his motion that the language in the threat "will be entitled to" is too conditional to be a true threat. *See* Motion at 6 (Doc. 21). However, as the Ninth Circuit has explained, "the conditional nature of a statement may be a factor in determining whether it constitutes a true threat," but it "is not dispositive." *United States v. Sutcliffe*, 505 F.3d 944, 961 (9th Cir. 2007) (citing *United States v. Watts*, 394 U.S. 705, 708 (1969)); *see also United States v. Weiss*, No. 20-10283, 2021 WL 6116629, at *2 (9th Cir. Dec. 27, 2021); *United States v. Havens*, 793 F. App'x 475, 476 (9th Cir. 2019). Rather, "[m]ost threats are conditional; they are designed to accomplish something; the threatener hopes that they *will* accomplish it, so that he won't have to carry out the threats." *Sutcliffe*, 505 F.3d at 961 (quoting *United States v. Schneider*, 910 F.2d 1569, 1570 (7th Cir. 1990)). As a non-dispositive factor in the true-threat analysis, whether Defendant's threat in Count 1 was conditional does not support dismissing the Indictment. Defendant's motion does not acknowledge the low, "no reasonable jury," standard for his motion to dismiss, and the conditional nature or clarity of named victims that will be presented to the jury does not reach that standard.

### B.     All Three Counts Properly State an Offense.

Defendant argues that all three counts fail to state an offense because the additional potential *mens rea* of recklessness was including in the conjunctive. In all three counts, the charging language includes the statutory language required to satisfy Rules 7 and 12 of the Federal Rules of Criminal Procedure and includes the separate additional recklessness language based on new and unsettled caselaw on the proper *mens rea* for threats charges. The language tracks, and charges in the conjunctive, the intent requirement that the threat was a "true threat" and the potential element of reckless disregard as to whether a communication will be viewed as a threat. Being overly inclusive in charging in the conjunctive does not constitute a failure to state an offense under Fed. R. Crim P. 12(b)(3)(B)(v). As discussed above, the government erred on the side of being overly inclusive to plead in the conjunctive to include the reckless disregard standard established in *Counterman.* It is an issue for this Court at trial to select the final language for the jury

instructions and dismissal is not the proper remedy for including potential language in the conjunctive that will not prejudice the defendant at trial.

### C. Counts one and three are inclusive of making a threat in writing.

Defendant lodged documents containing written threats in two different federal courthouses on the dates alleged in the Indictment. He now argues that the counts charged under 18 U.S.C. § 871 do not include such action and offers a statutory interpretation argument that "otherwise delivered" is overbroad. But, while many cases involving threats involve mail, threats charged under § 871 can be verbal or written, mailed or hand delivered. *See United States v. Dutcher,* 851 F.3d 757 (7th Cir. 2017) (Facebook post and repeated verbal threats sufficient for conviction under 871); *United States v. Hanna,* 293 F.3d 1080 (9th Cir. 2002) (where defendant mailed or **hand delivered** a variety of documents, suggesting the president should be killed, to his neighbors, businesses and state and local governments without sending any to the President or even any federal agencies, the statute was not overbroad and the case was properly submitted to the jury); *See also United States v. Patillo,* 431 F.2d 293 (4th Cir. 1970) (a security guard was convicted under 871 where he told a co-worker he was gong to Washington to kill the president); *United States v. Howell,* 719 F.2d 1258 (5th Cir. 1983) (comment by mental hospital patient that it was too bad an assassination attempt failed and he will kill the president if he gets a chance sufficient); *United States v. Cessor,* 30 F.4th 736 (8th Cir. 2022) (where defendant stole a gun from his father and spray painted a line through the president's name on his truck and began driving towards the White House then turned himself in to a mental hospital court found it was a question for the jury). The fact that the threats in this case were hand delivered to a Federal Court for filing does not negate the validity of the charge under 18 U.S.C. § 871.

//

//

**Conclusion**

For all of these reasons, Defendant's motion to dismiss the Indictment should be denied.

Respectfully submitted this 2nd Day of April, 2025.

TIMOTHY COURCHAINE
United States Attorney
District of Arizona

*s/Abbie Broughton*
ABBIE S. BROUGHTON
Assistant U.S. Attorneys

**Certificate of Service**

I hereby certify that on April 2, 2025, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Success Carter
Michael Ryan
Attorneys for Defendant

*s/Alexandria Gaulin*
U.S. Attorney's Office