**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-25-00153-001-PHX-SMM |
| Plaintiff, | **ORDER** |
| v. | |
| Rene Ortiz, | |
| Defendant. | |

This matter is before the Court on Defendant's Motion for a New Trial. (Doc. 236). The Government filed a response (Doc. 238) and Defendant did not file a reply. For the following reasons, the Court denies Defendant's Motion.

## I.   BACKGROUND

Before trial, the Court sent a juror questionnaire to prospective jurors and received 118 responses. The questionnaire included questions about mental health issues because Defendant's predominant theory of the case was that his various mental health conditions prevented him from acting with the intent required to commit the crimes charged.

The questionnaire included Question 17, which read: "Do you have strong feelings about individuals with mental health issues that may cause you to feel that you may not be fair and impartial?" (Doc. 285-2). In her juror questionnaire, voir dire Juror 15[1] responded, "Yes, I have a soft spot for people with mental health issues." (Id.) In

---

[1] Voir dire Juror 15 submitted her juror questionnaire under Pool Sequence Number 285 and identified herself as a Black/African American woman. (See Doc. 236-2).

addition, when asked whether she or anyone close to her had ever been investigated, arrested, jailed, charged with, or convicted of a crime (Question 10), she responded "Yes"; when asked to provide more information regarding the jurisdiction, charge, and outcome of the case and whether she believed she had been treated fairly in the process, she responded "privacy." (Id.) Similarly, when asked whether she or anyone close to her owned a firearm or had personal experience with firearms or people who own firearms (Question 14), she responded "Yes"; when asked to provide more information, she again responded "privacy." (Id.)

The Government used one of its peremptory challenges to strike Juror 15 based on the reasons stated above. After passing the panel for cause and for any Batson challenges, and after the jury was seated, Defendant raised a "concern" at sidebar about Juror 15 being stricken. (Doc. 238 at 120). Although Defendant offered no showing that the strike was race-based (other than that the Government had also stricken voir dire Juror 26[2], who had two felony convictions for assault), the Government offered a race-neutral reason for striking Juror 15, citing her questionnaire response to Question 17 that she had a "soft spot" for people with mental health issues. (Id. at 121.) The Court did not explicitly rule on Defendant's "concern" with Juror 15 but found the Government had offered a race-neutral basis for striking Juror 26. (Id. at 122).

Then, the Court swore in the jury and the four-day trial continued. (Id. at 123). After deliberating for less than an hour, the jury found Defendant guilty on all three counts in the superseding indictment. (Doc. 218). Defendant later filed the instant Motion for a New Trial. (Doc. 236).

## II.    LEGAL STANDARD

A district court may grant a new trial under Federal Rule of Criminal Procedure 33 only "if the interest of justice so requires." A motion to grant a new trial is warranted

---

[2] Voir dire Juror 26 submitted his juror questionnaire under Pool Sequence Number 146 and identified himself as a Black/African-American man (see Doc. 236-1). After hearing the government's reasons for striking Juror 26, i.e., his two felony convictions, some uncertainty regarding the status of his rights restoration, and the fact that he had gone through the legal process, the Court found these reasons to be race neutral. (Doc. 238-1 at 122.)

- 2 -

"only in exceptional cases in which the evidence preponderates heavily against the verdict." United States v. Pimental, 654 F.2d 538, 545 (9th Cir. 1981) (citation omitted). The decision whether to grant such a motion "is within the sound discretion of the district court." United States v. Steel, 759 F.2d 706, 713 (9th Cir. 1985).

A prosecutor may ordinarily exercise a peremptory strike for any reason related to his or her view concerning the outcome of the case, so long as the reason is not for a discriminatory purpose, such as race. Batson v. Kentucky, 476 U.S. 79, 89 (1986). The Supreme Court in Batson created a three-step process for adjudicating a defendant's claim that a prosecutor's peremptory strike was impermissibly based on race: (1) a defendant must make a prima facie showing that the strike was based on race; (2) if a defendant does so, the prosecutor must then offer a non-pretextual race-neutral reason for striking the juror in question; and (3) in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination. United States v. Hernandez-Garcia, 44 F.4th 1157, 1166 (9th Cir. 2022). In assessing the plausibility of a defendant's claim, the Court must consider the "totality of the relevant facts" and "all relevant circumstances" surrounding the strike. Batson, 476 U.S. at 94, 96.

## III.    DISCUSSION

Defendant moves the Court for a new trial pursuant to Federal Rule of Criminal Procedure 33(b)(2) on the ground that the Government's use of peremptory challenges during jury selection violated his constitutional rights. (Doc. 236 at 1). Specifically, Defendant contends that the Government struck Juror 15, a black woman, for a discriminatory purpose based on a comparison of the juror questionnaire responses. (Id. at 2). Upon review of the record and the voir dire transcript in its entirety, the Court denies Defendant's Motion for a New Trial for the reasons below.

### A. Timeliness

First, Defendant's Batson challenges are untimely. Defendant passed the panel two times without objection, the panel was already dismissed, and the jury was seated when Defendant made his first Batson challenge. A Batson challenge "must be made as soon as

- 3 -

possible." United States v. Contreras-Contreras, 83 F.3d 1103, 1104 (9th Cir. 1996); Dias v. Sky Chefs, Inc., 948 F.2d 532, 534 (9th Cir. 1991). But, here, Defendant failed to make a Batson challenge before the panel was dismissed despite multiple opportunities to do so. Before the panel was excused, the Court even asked counsel directly if they had any Batson challenges before dismissing the panel:

> THE COURT: . . . are there any Batson challenges on the strikes?
>
> MS. CARTER: Not from the defense, no.

(Doc. 238-1 at 117). It was not until the panel was already dismissed and the jury was seated that Defendant raised his Batson challenge at sidebar. (Id. at 121). Defendant also did not challenge the Government's race neutral, non-discriminatory reason for striking Juror 15. (See id. at 122). Thus, Defendant's failure "to make an initial objection" to the Government's peremptory strike of Juror 15 is an adequate basis, on its own, for denying Defendant's Motion. See Contreras-Contreras, 83 F.3d at 1105 (finding a defendant's Batson challenge was waived as untimely because the defendant "not only failed to make an initial objection to the challenge, but also failed to object to the prosecution's volunteered explanation.").

### B. Race-Neutral, Non-Discriminatory Reasons

Second, the Government stated multiple race-neutral, non-discriminatory reasons for striking Juror 15. As explained during the sidebar, Juror 15 answered Question 17 of the juror questionnaire—which asked whether she had "strong feelings about individuals with mental health issues that may cause [her] to feel that [she] may not be fair and impartial"—with "Yes, I have a soft spot for people with mental health issues." (Docs. 238 at 4; 238-1 at 122) (emphasis added). The Government contends that Juror 15's "Yes" answer and self-identified "soft spot" were valid, non-pretextual reasons for the Government to exercise a peremptory strike. (Doc. 238 at 4). As evidenced throughout the trial, Defendant's theory of the case was that his mental health challenges prevented him from forming the requisite intent to make the threats charged in the superseding indictment. Thus, a prospective juror's self-stated inability to be fair and impartial

because of her strong feelings about individuals with mental health issues is directly relevant and under is a valid race-neutral reason for striking her. See Fields v. Brown, 503 F.3d 755, 767 (9th Cir. 2007) ("Actual bias is typically found when a prospective juror states that he can not be impartial, or expresses a view adverse to one party's position and responds equivocally as to whether he could be fair and impartial despite that view."); see also Briggs v. Grounds, 682 F.3d 1165 (9th Cir. 2012) (finding peremptory strikes based on responses to juror questionnaires were valid race-neutral reasons).

Also, "[c]oncern that a juror might have reason to sympathize or identify with the defendant, regardless of whether the identifying feature relates to the merits of the case" can be a valid race-neutral reason for striking a juror. Jamerson v. Runnels, 713 F.3d 1218, 1229 (9th Cir. 2013); see also Williams v. Rhoades, 354 F.3d 1101, 1109–10 (9th Cir.2004) (fear that a juror might identify with the defendant because both had young sons was a valid, race-neutral reason to exercise a peremptory strike).

Further, a comparative juror analysis supports the Government's justification. A comparative juror analysis involves comparing the characteristics of a struck juror with the characteristics of other potential jurors, particularly those jurors whom the prosecutor did not strike. See Miller–El v. Dretke, 545 U.S. 231, 241, 247–48 (2005). "An inference of discrimination may arise when two or more potential jurors share the same relevant attributes but the prosecutor has challenged only the minority juror." United States v. Collins, 551 F.3d 914, 922 (9th Cir. 2009).

Here, Juror 15 was the only respondent who said she may not be able to be fair and impartial because of her strong feelings about individuals with mental health issues. (See Docs. 236-1; 236-2; 236-3; 236-4; 236-5; 236-6). Indeed, trial Jurors 1-5, 7, 11, and 13-14 all responded "No" to Question 17. (Id.) Furthermore, none of the other four trial jurors referenced in Defendant's motion (Jurors 6, 8, 9, and 12) answered "Yes" to Question 17. (Id.) Three of the four answered "No" or indicated they did not see how their feelings on mental health would impact their fairness or impartiality. (Id.) And

- 5 -

while selected Juror 9 expressed "compassion" for individuals with mental health issues, she responded was not sure if those feelings would make her impartial. (Id.) Because Jurors 6, 8, and 12 provided clear "No" responses to Question 17, and Juror 9 equivocated as to whether her feelings would cause her to be impartial, none of these jurors are similarly situated to Juror 15, who responded "Yes" to Question 17.

The Government also contends that it struck Juror 15 because it had incomplete information about her experiences with the criminal justice system and with firearms. (Doc. 238 at 6). Juror 15 indicated that (1) she or someone close to her had been investigated, arrested, jailed, charged with or convicted of a crime (Question 10); and (2) she or someone close to her owned a firearm, or she had personal experience with firearms or with people who own them (Question 14). (Doc. 236-2). Yet when asked for additional information regarding both questions (including whether she believed she had been treated fairly by the criminal legal system), she responded "privacy." (Id.)

In addition, when asked during voir dire by the Court and the Government whether any prospective jurors wished to speak to the Court or attorneys privately, including about prior convictions, Juror 15 did not raise her hand. (Doc. 238-1 at 19, 99.) Thus, there was incomplete information about Juror 15's experiences with firearms and the criminal justice system, topics that may have borne on her bias, fairness, or impartiality. See United States v. Vaccaro, 816 F.2d 443, 457 (9th Cir. 1987), overruled on other grounds by Huddleston v. United States, 485 U.S. 681 (1988) (recognizing that having relatives who have been convicted of crimes is a valid reason for the government to exercise a peremptory strike); Mitleider v. Hall, 391 F.3d 1039, 1048 (9th Cir. 2004) (holding that striking a prospective juror because her brother had been convicted of cocaine possession was a facially neutral reason).

### C. Prima Facie Case

Third, Defendant fails to establish a prima facie case of discrimination. Under the first step of Batson challenge, a defendant must establish his prima facie case of discrimination by showing that "(1) the prospective juror is a member of a cognizable

racial group, (2) the prosecutor used a peremptory strike to remove the juror, and (3) the totality of the circumstances raises an inference that the strike was motivated by race." Boyd v. Newland, 467 F.3d 1139, 1143 (9th Cir. 2006). "If he failed to establish a prima facie case, then the motion properly was denied; the prosecutor need not have provided a race-neutral explanation for the strike." Id.

Here, elements one and two are undisputed—Juror 15 is black, and the Government used a peremptory strike to remove her. But Defendant fails to satisfy element three of his prima facie case. The Court already found that Juror 26[3] was struck for a race-neutral reason and that the other jurors are not similarly situated. But Defendant provides no other reason why the peremptory strike was invalid other than that Juror 15 is black. "[G]enerally striking only one prospective juror who belongs to a protected group is not enough to draw an inference without other evidence." Nguyen v. Frauenheim, 45 F.4th 1094, 1101 (9th Cir. 2022) (citation omitted). "Nor is striking two prospective jurors." Id. (citation omitted). Thus, the Court finds that Defendant fails step one of his Batson challenge and fails to establish a prima facie case of purposeful discrimination.

Accordingly, for the reasons set forth,

**IT IS ORDERED denying** Defendant's Motion for a New Trial. (Doc. 236).

Dated this 17th day of July, 2026.

_____
Stephen M. McNamee
Senior United States District Judge

---

[3] Defendant no longer challenges the Court's finding that Juror 26 was struck for a valid race-neutral, non-discriminatory reason—he had two prior felony convictions. (See Doc. 236).

- 7 -